## UNITED STATES DISTRICT COURT
## IN THE EASTERN DISTRICT OF MICHIGAN

_____

INTERNATIONAL BROTHERHOOD of
ELECTRICAL WORKERS (IBEW), LOCAL 58,     Case No.
by and on behalf of itself and its members,     Hon.

              Plaintiff,

vs.

POWER HOME SOLAR, LLC.,

              Defendant.
_____/

**MILLER COHEN, P.L.C.**
Richard G. Mack, Jr. (P 58657)
Ryan A Paree (P80345)
Attorneys for Plaintiffs
7700 Second Ave, Ste 335,
Detroit, Michigan 48202
(313) 964-4454

_____/

## VERIFIED COMPLAINT AND JURY DEMAND

### THERE IS A COMPANION CASE
There is another pending civil action arising out of the
same transaction or occurrence alleged in this complaint, and being
brought against the same Defendant Power Home Solar LLC. It is
Case No. 2:22-cv-12190 filed before Hon. Linda V. Parker.

_____/s/Richard G. Mack, Jr._____
Richard G. Mack, Jr.

**NOW COMES** Plaintiff International Brotherhood of Electrical Workers,

Local 58 ("Union", "Plaintiff" or  "IBEW"), by and through its attorneys, Miller

Cohen, P.L.C., and states for their Verified Complaint and Jury Demand as follows:

## **INTRODUCTION**

1.   Plaintiff IBEW represents Employees of Defendant who work at the Chesterfield, Michigan Branch ("Employees"); the only branch which was unionized.   Given certain signs of operational trouble, on about August 12, 2022, Plaintiff asked whether Defendant's Chesterfield branch would remain open.   Defendant's agents lied and answered in the affirmative.   Approximately one month later on or about September 9th, the Employees at that the Chesterfield branch were terminated without cause.   Employees were told about this termination at some point between September 9th and September 11th.   They were told to report to the branch on Monday September 12th to retrieve their tools.   They were not allowed inside the building that day, as the branch had already closed.   Thus, approximately sixty-four (64) Employees were denied notice of this plant closure, and terminated without cause.

2.   **As of September 21, 2022, due to severe financial troubles, ALL Power Home Solar Employees were terminated, effective immediately**. (Exhibit 1, CEO Waller notice to Employees 9/21/2022) As described below, the financial troubles of Power Home Solar had been brewing for years, and as of September 21st, finally bubbled over

to being unbearable.

3.     Plaintiff IBEW files this action under the WARN Act, 29 U.S.C. §2101,

et seq., against Defendant Power Home Solar, LLC.   Defendant failed

to provide the requisite sixty (60) days' notice of the closing of their

plant located in Chesterfield, County of Macomb, State of Michigan.

4.     Further, Employees have been denied their contractual employment

rights, to the extent they are not covered under the WARN Act equitable

relief.

5.     Plaintiff estimates that the debts owed to its members called for in this

Complaint, plus reasonable attorney's fees and costs, amount to

approximately $1,200,000.

6.     Because Power Home Solar will no longer operate as of September 21,

2022 (Exhibit 1), it will be unable to satisfy the debt owed to the IBEW

members without injunctive relief from this Honorable Court.

7.     Further evidence of PHS financial challenges include:

a.  PHS selling its office equipment and other items from its closed

facilities on Facebook Marketplace (i.e., desks, coffee maker, old

televisions),

b.  PHS's inability to satisfy its wage and benefit debts to its Employees

(such as employees not being paid for several thousand dollars of debts incurred by Employees on their personal credit card),

c.  Plummeting revenue due to a huge slump in new sales, repeated negative media attention in multiple media markets,

d.  Literally dozens of lawsuits from multiple plaintiffs across the country, and

e.  A severe inability to pay its bills to numerous creditors.

8.  While Defendant is shutting down their business operations, Plaintiff estimates that Defendant's remaining assets include millions in accounts receivables, office equipment, real property, and building materials.

9.  Defendant is likely to liquidate as soon as possible, but once Defendant's assets are liquidated, recovery of Plaintiff's damages will become virtually, if not actually, impossible.

10.  Plaintiff is asking that this Honorable Court freeze and place in escrow a sufficient amount of assets of the Defendant, in order to satisfy the debts owed to Plaintiffs as outlined in this Complaint.

11.  The harm to Defendant resulting from such an injunction is minimal, possibly even nonexistent, given that Defendant has decided to shut

down their operations.

12.   Plaintiff also asks this Honorable Court to award the members of IBEW all relief to which they are entitled under the WARN Act and the members' employment contract.

## **PARTIES**

13.   Plaintiff IBEW is a voluntary association and union, doing business in the Eastern District of Michigan.   As a certified representative of the Employees of Defendant Power Home Solar's Chesterfield Michigan branch, pursuant to 29 USCS § 159(a), it is enabled to present this cause of action pursuant to 29 USCS §§ 2101(a)(4), 2104(a)(1), 2104(a)(5).

14.   Defendant Power Home Solar LLC (PHS) is a Michigan limited liability corporation that does business in the Eastern District of the State of Michigan. As of and immediately before September 9, 2022, it employed approximately fifteen hundred (1500) non part-time employees, (Exhibit 2, CEO Waller Blog post 9/9/2022), approximately sixty-four (64) of whom are represented by the Plaintiff IBEW. It is an employer within the meaning of 29 U.S.C. §2101 et seq.

## **VENUE**

15.   Venue is proper in the United States District Court, Eastern District of

Michigan, Southern Division, where Defendant does business, 28 U.S.C. §1391.  Venue is also proper, pursuant to 29 U.S.C. §2104, since the acts constituting a violation of the WARN Act occurred, and the claims for such violations arose in this District.

## JURISDICTION

16.    As this Court has original jurisdiction over all civil actions arising under the laws of the United States, 29 U.S.C. §2101 et seq., this Court may properly assert jurisdiction.   The statute upon which Plaintiff relies, 29 U.S.C. §2104, also grants this court with jurisdiction over this civil action.

17.    Under 28 USC §1367, this Court has supplemental jurisdiction over Plaintiff's state law claims.

## FACTUAL ALLEGATIONS

18.    PHS was in the business of selling solar panels to residential and commercial customers.  It did so from a number of branches across sixteen states, including Michigan.

19.    All of Defendant's employees represented by the IBEW worked at the single site in Chesterfield, Michigan.

20.    PHS was organized as a Mooresville, North Carolina corporation.

6

21.    Power Home Solar started as a company in 2014.   Its website describes its history as going from 10 Employees in 2014 to 1650 Employees in 2020. (https://gopink.com/about/history/)   As of immediately prior to September 9, 2022, according to a statement from CEO Jayson Waller on the Company website, it employed approximately 1500 employees. (Exhibit 2)

22.    In October 2021, the Plaintiff IBEW Union was certified by the National Labor Relations Board as the Union representing a number of employee classifications at the PHS's Chesterfield Branch.   These Employees handled the installation and servicing of the solar panels.

23.    There were roughly about sixty-four (64) Employees at the Chesterfield branch as of September 11, 2022.

24.    Since October 2021, the Plaintiff IBEW Union has been attempting to negotiate a union contract with PHS.

25.    PHS has refused to negotiate a union contract with the IBEW in good faith, an issue being resolved with legal charges before the National Labor Relations Board.

26.    In about April 2022, PHS started doing business as "Pink Energy".

27.    IBEW agents became concerned that the PHS Chesterfield branch

would not continue as a long-term operation.

28.   PHS had received a lot of negative media attention. Television news stations in Wilmington, Delaware; Kansas City, Missouri; and Detroit, Michigan ran negative news stories about PHS.

29.   Also, IBEW agents noticed that the Chesterfield branch was not purchasing Pink Energy paraphernalia for its vehicles, equipment and supplies.

30.   Also during June and July 2022, PHS announced that it would need to layoff a number of Employees because they experienced significant slumps in their revenue.

31.   Also during June and July 2022, PHS provided that their revenue and new sales declined significantly.

32.   Thus, on about August 12, 2022, IBEW agents met with PHS agents. During this meeting, IBEW agents asked PHS agents whether the Chesterfield branch had any plans to close or reduce operations, because of the many signs suggesting financial trouble for PHS.

33.   During August 12th meeting, PHS agents took a private caucus to discuss this IBEW question about the proposed outlook of the Chesterfield branch.  When returning from the caucus, PHS agents

8

confidently stated that there were no plans to close the Chesterfield branch, and that the Chesterfield branch be around for some time.

34.   Current employees of PHS' Chesterfield branch participated in the August 12th meeting.   Thus, they were given assurances about the longevity of the Chesterfield branch from the PHS agent's comments.

35.   One month later, on about Friday September 9, 2022, PHS announced that it was laying off 500 Employees. (Exhibit 2)   That same evening, IBEW began hearing rumors that the Chesterfield branch was going to close.   It is possible that some members of the IBEW Union heard about the closure as early as Friday, September 9, 2022.

36.   At no time has Defendant PHS served a written notice on agents of the Plaintiff IBEW, as required by the WARN Act. 29 USC § 2102(a).

37.   On about Sunday September 11th many Chesterfield branch Employees were called and told that the Chesterfield branch was closed. These Employees were told to come in to the branch on September 12th only for the purpose of retrieving their personally owned tools.

38.   All of the Chesterfield branch Employees had their employment terminated without cause, and as a result of the Chesterfield branch closing.

9

39.   On Monday, September 12, 2022, Employees arrived at the Chesterfield branch.   They were not allowed inside of the building but were directed to retrieve their tools from the company vehicles on the lot.

40.   Plaintiff and its members were not given more notice than this.   Thus, Plaintiff's members were denied adequate notice pursuant to the WARN Act.

41.   The Chesterfield Employees were entitled to sixty (60) days' notice of a layoff under the WARN Act. 29 U.S.C. §2101, et seq.

42.   Under the WARN Act, PHS Employees are owed compensation such as wages, bonuses, per diem pay, accrued banked time, holiday pay, vacation pay, health insurance coverage, 401K contributions, and other fringe benefits and compensation.

43.   The WARN Act also entitles the Plaintiff to attorney's fees and costs.

44.   Altogether, it is presumed that members of Plaintiff IBEW are entitled to relief close to $1,200,000, for the claims sought within this Complaint.

*Factual Allegations Reflecting PHS's Battered Reputation*

45.   PHS's reputation has taken a literal pummeling within the last nine to

10

twelve months, across the country, in television and print media, and elsewhere.

46.   Since at least March of this year, television stations across the country have published negative stories about PHS:

a.   On March 30, 2022, NBCs WECT News 6, in Wilmington, North Carolina, ran a negative story that homeowners across the Midwest were misled by PHS: "***Customers say they're being burned by some solar companies***"

(https://www.wect.com/2022/03/30/customers-say-theyre-being-burned-by-some-solar-companies/)

b.   On April 1, 2022, Fox 4 in Kansas City, Missouri ran a negative-PHS story entitled: "***Missouri AG investigating solar company amid customer complaint***" (https://www.ozarksfirst.com/local-news/regional-news/kansascitynews/missouri-ag-investigating-solar-company-amid-customer-complaints/)

c.   On April 13, 2022, Detroit's Fox 2 News ran a story about PHS's deceptive sales tactics: ***Powerhome Solar Customers Say They Were Left In The Dark With Hidden High Costs***: (https://www.fox2detroit.com/video/1057519)

d. In May 2022, thirty-one (31) home owners were interviewed by CBS4 in Indianapolis, Indiana, reflecting repeated deceptive and fraudulent sales tactics of PHS: ***Dozens Of Customers 'Heated' After Installing Solar Panels*** (https://cbs4indy.com/cbs4-investigates/dozens-of-customers-heated-after-installing-solar-panels/)

e. On July 28, 2022, on the ABC television station NEWS5 in Cleveland, Ohio published a negative-PHS news story entitled: "***Many solar customers claim PowerHome Solar sales pitches fell way short of promises***". (https://www.news5cleveland.com/news/local-news/investigations/many-solar-customers-claim-powerhome-solar-sales-pitches-fell-way-short-of-promises)

f. On September 6, 2022, WBTV of Norwood, North Carolina published a negative PHS television story entitled: "***NC solar power company faces investigation, lawsuits and hundreds of customer complaints***" (https://www.wbtv.com/2022/09/06/nc-solar-power-company-faces-investigation-lawsuits-hundreds-customer-complaints/)

g. On September 14, 2022, another negative story ran concerning Power Home Solar: ***Dark Days Ahead? Pink Energy, aka PowerHome Solar, Troubles Mount*** (https://www.fox2detroit.com/news/going-dark-pink-energy-aka-power-home-solar-troubles-mount)

47. According to the Better Business Bureau website, there have been 1,185 customer complaints against PHS in the last three years. The website describes the complaints as being in a consistent pattern, as follows:

"According to information in BBB files, Power Home Solar, LLC d/b/a Pink Energy has a pattern of complaints in the areas of product and/or sales practice issues, as well as customer service issues. Specifically, complainants allege that during the sales process representatives are suggesting the consumer can expect large savings on their electricity/utility bills as a result of the solar panel systems being installed. Complainants allege that the sales representatives claim the solar power will provide the majority of the energy needed/used by the consumer's home and sometimes overproduce resulting in credits from the power companies. Once the contract has been signed, complainants allege that they experience long delays in getting their systems activated due to inspection issues or equipment issues. Additionally, once turned on, complainants allege the systems are not producing as much energy as previously suggested during the sales process. Complainants are furthermore alleging that once they attempt to bring these issues to the company's attention, they are experiencing communication challenges such as long hold times on the phone, lack of response to emails,

and/or unfulfilled promises to review the systems in question."

(https://www.bbb.org/us/nc/mooresville/profile/solar-energy-equipment-dealers/pink-energy-0473-412518/complaints)

48. Currently on Yelp (Troy), PHS has a 1.5 out of 5 rating. (https://www.yelp.com/biz/powerhome-solar-troy)

49. On a solar review website, PHS has a 1.9 out of 5 rating. (https://www.solarreviews.com/installers/power-home-solar-reviews)

*PHS's Financial Troubles Brought About Within The Last Year*

50. PHS is suing a supplier for one of its parts used in solar panels – Generac Power Systems, LLC. PHS alleges that a Generac part is faulty. (Exhibit 3)

51. The PHS Complaint mentions that the Generac parts caused property damage, even fires, at the homes of PHS customers. (Id, ¶¶ 44, 107 - 112, etc.)

52. PHS's Complaint alleges that of its 35,000 total customers (Id., ¶ 8), 19,000 used the Generac part (Id., ¶ 118) Of those 19,000, "approximately half of these customers" had defective a Generac part which caused the solar panel system not to operate. (Id., ¶119)

53. Thus, one out of every four of the total group of OHS customers had

inoperable solar panel systems.

54. PHS's Complaint alleges that these defective solar panel systems caused "significant harm to [PHS's] reputation and goodwill." (Id., ¶ 122)  Specifically, PHS alleges that "[a]n overwhelming number of negative reviews and complaints to the Better Business Bureau, social media, and other review platforms have damaged PHS's reputation in the markets in which it does business and interfered with relationships with actual and potential customers." (Id., ¶ 123)

55. PHS's Complaint also alleges that it is enduring many financial expenses as a result of the faulty panels.   For instance, PHS has had to hire additional customer service personnel (Id, ¶ 121).

56. Plus, PHS needed to hire additional service technicians to handle the additional 16,000 service calls that PHS has had to handle, which has costed PHS $1000/call (Id., ¶ 116)   As of August 2022 (the month the Complaint was filed), the PHS service outages and consequential service calls are still "growing daily as customers continue to experience service outages and other problems". (Id, ¶ 116)

57. PHS projected that the issues caused by Generac's faulty parts has "caused PHS to incur direct and actual damages in the tens of millions

of dollars", including reimbursement for customer property damage, part replacement, and reimbursing customers for loans while the solar panel systems were inoperable. (Id., ¶ 127)   PHS has invoiced Generac for $39 million due to such damages. (Id., ¶ 129)

58.   PHS's Complaint alleges that PHS has "suffered brand and reputational damages and lost profits in the hundreds of millions of dollars due to the damage to its brand and reputation caused by customer dissatisfaction and complaints". (Id., ¶130)   PHS blames Generac for its "numerous PHS customer complaints, ridicule and demands resulting in a public relations disaster." (Id., ¶131)

59.   Altogether, PHS alleges that its company went from being valued at more than $1 billion, to $452 million. (Id., ¶ 138)

60.   During a meeting with IBEW, PHS revealed that the company was enduring serious slumps in revenue, due to drastically reduced customer demand for its product.

61.   As shown by Exhibit 4, a 6/30/2022 letter from PHS's attorney, PHS in the Chesterfield location averaged about 152 new sales each month during the year 2021.   That number plummeted to 73 new sales in April 2022, which represents a 52% slump in new sales based in the

2021 average. In May 2022, the branch had only 57 new sales, which represents a 63% decrease in sales.

62. With the layoffs at Chesterfield, news reports have been published which indicate that PHS has had to layoff 1,100 workers within the last few months, due to financial troubles. (Exhibit 5, "***PowerHome Solar Slashes Half Its Workforce, Discontinues NC Installations In Wake Of Generac Failures***; Charlotte Business Journal, Sept 12, 2022) (Exhibit 2, CEO Waller 9/9/2022 statement)

63. Specifically, the Charlotte Business Journal article reports, 600 Employees were laid off from PHS in May 2022, followed by another 500 in September 2022. (Id)

64. PHS has listed the office equipment, apparently located in Chesterfield Michigan, for sale on Facebook Market Place. Items such as office desks, televisions, coffee makers, chairs, etc., are being sold by "Jess H" – a PHS administrative employee. Attached are pictures of the Facebook Marketplace listings. (Exhibit 6, pictures of Facebook Marketplace postings)

*PHS Financial Records Reveal Deep Financial Trouble*

65. Plaintiff attaches the Experian Powered Business Data Report, secured

17

from LexisNexis. (Exhibit 7, PHS Experian Report)

66.    Within the Experian Report, PHS held approximately $1,307,800 in active, reported debt to various creditors, found on page 4 listed under "Trade Payment Totals". (Exhibit 7, p 4)   The accounts listed are increasingly growing further and further delinquent, with more than 56% of their total reported debt being delinquent by at least 30 days late.   Further, 29% of the PHS debt is more than 60 days late (20% is 61-90 days late, and another 9% is 91 or more days late).

67.    In other words, within the $1.3 million of PHS's delinquent debt, $379,233 is more than ninety-one (91) days late.

68.    Also most of the $1.3 million delinquency – specifically $722,400 (Exhibit 7, pg 2) – is concerning to building ($166,100) and construction ($556,300) materials.   This fact indicates that Power Home Solar is unable to pay their materials suppliers. A construction company that is unable to pay its materials suppliers is going to quickly find itself unable to continue operations. This fate was ultimately realized when, on September 21, 2022, all PHS Employees were terminated without cause (Exhibit 1).

69.    This trend of PHS being tardy with payments did not just occur in 2022.

Within the Experian Report section "Additional Payment Experiences" on August 2, 2021 (Exhibit 7, p 3), the account for "Machinery" reported an at-least-30-day delinquency of $4,870,700.

70. Also, despite a major increase in payments on their debt, more than doubling since quarter two of 2021, Power Home Solar continues to see a significant increase in their total and delinquent debt. (Exhibit 7., pg 3-4)

71. Power Home Solar also continues to see an increase in tax liens filed against them. In the past year, there have been six tax liens filed against them in various states, including Indiana and West Virginia, for nearly $275,000.00. (Exhibit 7., pg 4-5)  Two of the tax liens have been filed in the last month, and combined they make a total of $197,358.00.

*PHS Abruptly And Completely Ends Operations On September 21, 2022*

72. As confidently as PHS has tried to appear of its financial outlook, ultimately it announced that will completely end operations.  All Employees have now been terminated without cause.

73. On September 21st, PHS's CEO Jayson Waller wrote the following to all of the existing PHS Employees (in part):

"[T]he increase in service calls combined with an unexpected

and drastic decline in sales and increase in post-sale cancellations have now forced us to make the decision to **close our doors completely and immediately**.  The decision we have to now make does not come lightly and has taken a tremendous toll on all of us and **it is with our deepest regrets that we are notifying all Pink Energy employees that your employment is terminated immediately effective today**."

(Exhibit 1) (**emphasis** added)

74.   Given this new directive, PHS has decided to forego making any further revenue, beyond existing accounts receivable.

75.   Because PHS has significant debt, it is almost certain that PHS will not satisfy the debts owed to Plaintiff's members.

76.   Defendant currently has the resources to satisfy Plaintiff's debts, but those resources will very quickly diminish, as seen by the selling of company assets on Facebook marketplace. Liquidation will proceed quickly given that Defendant has ceased all operations.

77.   Without an injunction from this Court, Defendant will likely liquidate their assets, leaving Plaintiff and its members with no relief available, despite the promise of such relief under the WARN Act.

*Facts Establishing The Right To Injunctive Relief*

78.   The Plaintiff is able to demonstrate that it has a likelihood of success in proving the violation of the WARN Act and a breach of contract. There

20

is no debate that Plaintiff's members were denied the requisite sixty (60) day notice of the plant closing.   Further, given Defendant PHS's size is more than 100 Employees, and that the Chesterfield site had more than fifty (50) Employees, PHS was an Employer obligated to comply with the WARN Act.

79.   Plaintiff is able to demonstrate irreparable harm if the injunction is not granted.   Given the PHS's decision to cease operations – and therefore foregoing the ability to receive new revenue, and given PHS's severe financial debt, the company will be unable to satisfy the debt owed to Plaintiff's members as outlined in this Complaint. Thus, without this injunction, Plaintiff will have no other avenue to attain the relief sought in this Complaint.

80.   The balance of harms supports the issuance of the injunction.   Plaintiff and its members will suffer far more without the injunction, than Defendant will with the issuance of the injunction. Without the injunction, Plaintiff's members will likely be unable to collect the entitled relief.   With the injunction, however, Defendant will merely be required to freeze sufficient assets to be granted relief sought. Defendant is no longer in operation, so the risk to Defendant is almost

non-existent.

81.    The public interest supports the issuance of the injunction, given that the public always benefits with an Employer being obligated to comply with the law and satisfy its debts.

## COUNT I
## WARN ACT
## 29 U.S.C. §2101 et seq

82.    The IBEW hereby realleges all preceding paragraphs, as if more fully stated herein.

83.    On or about September 9, 2022, Defendant announced 500 layoffs across the country. (Exhibit 2)   Between September 9th and September 11th, Plaintiff's members learned verbally that   the Chesterfield plant was closing that day.

84.    Employees were told they were being terminated immediately, without cause, and told to report to the branch on September 12th to retrieve their tools.

85.    On September   9th, Defendant closed the Chesterfield facility and terminated the employment of their Employees.

86.    This was a "plant closure" within the meaning of 29 U.S.C. §2101 et seq.

87. The employment losses experienced by these employees due to the plant closing are permanent.  As a result, the employees represented by the IBEW are "affected employees" subject to an "employment loss," as defined by 29 U.S.C. §2101(a).

88. Defendant's agents informed their employees of the plant closing verbally, and denied them with adequate notice pursuant to the WARN Act.

89. Approximately one month before the September 9th closure, PHS agents committed fraud upon the IBEW members and Union leadership.  Then, PHS agents falsely represented that it intended for its Chesterfield branch to remain open, thereby denying the IBEW members of the option to seek other employment within the month prior to the closure.

90. PHS constitutes an Employer of the aggrieved Employees represented by the IBEW and are all employers of said employees within the meaning of 29 U.S.C. §2101.

91. Defendant is directly liable for their violations of  29 U.S.C. §2102 et seq.

92. Due to Defendant's illegal actions, their employees, represented by the

23

IBEW, have been deprived of wages, contractual benefits, fringe benefits (including medical insurance) and have suffered other damages.

## COUNT II –
## Breach Of Contract

**93.**    Plaintiffs hereby re-allege all preceding paragraphs, as if more fully stated herein.

94.    Plaintiff alleges this Count II only to the extent certain monies or other relief owed to Plaintiff's members is not covered by the WARN Act.

95.    The members of Plaintiff IBEW work for Defendant PHS.  They worked under employment contracts even though the Union had not yet negotiated a comprehensive Union contract at the time of the plant closing.

96.    The IBEW members worked for PHS under certain employment terms, such as the expectation of the reimbursement of expenses, and other benefits that the Employees have earned.

97.    PHS Employees have been denied such benefits under their employment relationship.

98.    As a result, Plaintiff IBEW members are entitled to damages as a result

of the breach, to the extent such fringe benefits are not covered under the relief pursuant to the WARN Act.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Honorable Court award the following:

a. That Defendant PHS and all of its agents, employees, representatives, and other acting on its behalf, immediately freeze assets sufficient to satisfy the relief sought in this Complaint. Plaintiff projects that amount should be approximately $1,200,000;

b. That Defendant place a minimum of $1,200,000 in an interest bearing escrow account controlled by this Honorable Court, not to be moved until further order of this Court;

c. That this Honorable Court issue an expedited scheduling order providing for an expedited discovery period, deadline to have motions for summary judgment filed and heard, and expedited hearing on the merits of the matters alleged in this Complaint;

d. That this Honorable Court award full relief pursuant to the WARN Act due to the lack of notice of the plant closure;

e. That this Honorable Court award Plaintiff's members for all monies

to which they were entitled under the employment contract which
they worked;

f.  That this Honorable Court award reasonable attorney's fees and
costs to Plaintiff incurred in having to bring this action

g.  That this Honorable Court award whatever relief it deems equitable
and necessary.

Respectfully submitted,

MILLER COHEN, P.L.C.

*/s/Richard G. Mack, Jr.*
Richard G. Mack, Jr. (P58657)
Ryan Paree (P80345)
7700 Second Ave, Ste 335
Detroit, MI 48202
313-964-4454

Date:  September 22, 2022

26

# UNITED STATES DISTRICT COURT
# IN THE EASTERN DISTRICT OF MICHIGAN

_____

INTERNATIONAL BROTHERHOOD of
ELECTRICAL WORKERS (IBEW), LOCAL 58,       Case No.
by and on behalf of itself and its members,                Hon.

Plaintiff,

vs.

POWER HOME SOLAR, LLC.,

Defendant.
_____/

**MILLER COHEN, P.L.C.**
Richard G. Mack, Jr. (P58657)
Ryan A. Paree (P80345)
Attorneys for Plaintiffs
7700 Second Ave, Ste 335
Detroit, Michigan 48202
(313) 964-4454
_____/

## DEMAND FOR TRIAL BY JURY

**NOW COMES** Plaintiff International Brotherhood of Electrical Workers,

Local 58 ("Union", "Plaintiff" or "IBEW"), by and through its attorneys,

**MILLER COHEN, P.L.C.**, and hereby demands for a trial by jury, for all issues

so triable.

27

Respectfully submitted,

MILLER COHEN, P.L.C.


*/s/Richard G. Mack, Jr.*
Richard G. Mack, Jr. (P58657)
Ryan A. Paree (P80345)
Attorneys for Plaintiff
7700 Second Ave, Ste 335
Detroit, Michigan 48202
(313) 964-4454

Date:  September 22, 2022

## <u>VERIFICATION OF THE COMPLAINT</u>

I, <u>Lamarr Jones,</u> being first duly sworn, deposes and says that as the authorized representative of International Brotherhood of Electrical Workers, Local 58 he can verify this Complaint, that he has read the complaint and based on his knowledge it is true as to its facts and he believes it is true as to its conclusions, to the best of his knowledge and belief.

Dated: September 22, 2022

_Lamarr Jones (by SB)_
Lamarr Jones

Subscribed and sworn to before me on
this 22 day of September, 2022

_Susan Carole Brohman_
Susan Carole Brohman , Notary Public
Oakland County, MI
Acting in Wayne County, MI
My Commission expires: 08/09/2023

SUSAN CAROLE BROHMAN
Notary Public, State of Michigan
County Of Oakland
My Commission Expires 08-09-2023
Acting in the County of Wayne

29